UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-10970-GAO

EDUARDO TELES DE MENEZES and CARLOS EDUARDO RODRIGUES MENEZES,
Plaintiffs,

v.

ANTONY J. BLINKEN, in his official capacity as Secretary of State,
and JACQUELINE WARD, in her official capacity of Consul General
of the U.S. Consulate General in Rio de Janeiro, Brazil,
Defendant.

OPINION AND ORDER
January 18, 2024

O'TOOLE, D.J.

Eduardo Teles de Menezes ("Eduardo"), a naturalized United States citizen living in Revere, Massachusetts, and Carlos Eduardo Rodrigues Menezes ("Carlos"), Eduardo's adult son living in Brazil, have brought this suit against Antony J. Blinken, Secretary of State, and Jacqueline Ward, Consul General of the United States Consulate General in Rio de Janeiro, Brazil, in their official capacities. They allege that the defendants violated either the Administrative Procedure Act or the Due Process Clause of the Fifth Amendment or both when the State Department reclassified Carlos's visa petition to a category with a longer processing time as a result of Eduardo's having been naturalized while Carlos's visa application was pending. The defendants have moved to dismiss the action for the absence of subject matter jurisdiction and the failure of the complaint to state a claim upon which relief may be granted.

"Nowhere is the scope of judicial inquiry more limited than the area of immigration legislation." Adams v. Baker, 909 F.2d 643, 647 (1st Cir. 1990). The Supreme Court "without exception has sustained Congress' plenary power to make rules for the admission of aliens and to

exclude those who possess those characteristics which Congress has forbidden." Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (internal quotation marks omitted). Congressional power "to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by [the Court's] previous adjudications." Id. "The political character of this intrinsically executive function renders it subject only to narrow judicial review." Adams, 909 F.3d at 647 (internal quotation marks omitted). With respect to visa decisions in particular, this "deference both to Congress, which sets the 'terms and conditions for admission of aliens,' and to the Executive, which carries out the congressional policy," is referred to as the doctrine of consular nonreviewability. Am. Sociological Ass'n v. Chertoff, 588 F. Supp. 2d 166, 169 (D. Mass. 2008).

However, a limited exception to the doctrine of consular nonreviewability may exist when the visa decision "may impact the [constitutional] rights of persons within the United States." See Liberty Church of the Assemblies of God v. Pompeo, 470 F. Supp. 3d 74, 77 (D. Mass. 2020) (alteration in original). But even in cases in which a negative visa determination may implicate a constitutional right, "judicial review is limited to determining whether the consular officer provided a facially legitimate and bona fide reason for the denial." Id. at 79. (citing Mandel, 408 U.S. at 768–70). "[I]f the consular officer premised the denial on a facially legitimate and bona fide reason, 'the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the [constitutional] interests of those' challenging the denial." Id. (citing Mandel, 408 U.S. at 770) (alteration in original); accord Chiang v. Skeirik, 582 F.3d 238, 242–43 (1st Cir. 2009); Adams, 909 F.3d at 647.

Here, the consular officer's decision did not infringe any constitutional rights of either of the plaintiffs. As to Carlos, a "noncitizen not physically present in the United States. . . does not have any constitutional rights to assert against" the defendants. See Liberty Church, 470 F. Supp. 3d at 77–78; see also Mandel, 408 U.S. at 762. As to Eduardo, who claims generally a "liberty interest in protecting family unity as well as freedom of personal choice in matters of family life," courts have not recognized a constitutional right related to the companionship of an adult child. See, e.g., Ortiz v. Burgos, 807 F.2d 6, 8 (1st Cir. 1986) (discussing 42 U.S.C. § 1983 claim); Rivera v. Medina, 963 F. Supp. 78, 82 (D.P.R. 1997) (same). In their opposition to the motion to dismiss, the plaintiffs argue that Eduardo has a "statutory liberty right created by the [Child Status Protection Act]" to reunify with his son without a waiting period. (Pls.' Resp. to Defs.' Second Mot. to Dismiss 16 (dkt. no. 27).) But judicial review of consular visa actions in this realm appears to be limited to *constitutional* interests, not *statutory* rights. See, e.g., Mandel, 408 U.S. at 762–65.

Because the plaintiffs here do not allege a recognized constitutional right implicated by the consular decision in this case, the consular nonreviewability doctrine proscribes further judicial review.

For the forgoing reasons, the government's Second Motion to Dismiss (dkt. no. 25) is GRANTED and the action is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge